JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 09 CV 10087

————————————————————— x

DAVID SGALAMBO, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

CRAIG MCKENZIE, LEIF SNETHUN,
MICHAEL E. COOLEN, GREGORY S.
NOVAL and LEIGH BILTON,

                    Defendants.

————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

CLASS ACTION

COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Canadian Superior Energy Inc. ("Canadian Superior" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of Canadian Superior between January 14, 2008 and February 17, 2009, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. §1391(b), as many of the false and misleading statements identified herein were distributed throughout this District and the Company's stock trades on the American Stock Exchange ("AMEX") which is located in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff David Sgalambro, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Canadian Superior during the Class Period and has been damaged thereby.

7.      Canadian Superior engages in the exploration for, acquisition, development, and production of petroleum and natural gas, and liquefied natural gas projects primarily in western Canada, offshore Nova Scotia, offshore Trinidad and Tobago, the United States, and North Africa. Canadian Superior has not been named as a defendant herein as it sought protection under Canadian bankruptcy and reorganization laws and has since reorganized.

8.      (a)      Defendant Craig McKenzie ("McKenzie") has served as Chief Executive Officer ("CEO") of Canadian Superior since October 1, 2007 and as a director of the Board of Directors ("Board") since November 15, 2007.

(b)      Defendant Leif Snethun ("Snethun") has served as President and Chief Operating Officer ("COO") of Canadian Superior since April 30, 2009.  Prior to joining Canadian Superior, Mr. Snethun was the founder, President and CEO of Seeker Petroleum Ltd., a private oil and gas exploration company based in Calgary, Alberta which was purchased by Canadian Superior in March of 2008. Mr. Snethun joined the Company in March of 2008, and held the position of Vice President for Western Canada until his appointment as COO.

(c)      Defendant Michael E. Coolen ("Coolen") served as President and COO of Canadian Superior from April 2006 to April 2009 and a director of the Board from November 2005.

(d)      Defendant Gregory S. Noval ("Noval") served as Executive Chairman of the Corporation from June 26, 2007 to April 24, 2009.  Prior to that, Defendant Noval was Chairman and CEO of Canadian Superior from August 2000 to October 2004.  Additionally, Defendant Noval

- 2 -

served as Chairman of the board of directors for Challenger Energy from 2004 until October 23, 2008.

(e)     Defendant Leigh Bilton ("Bilton") has served as COO of Canadian Superior since April 29, 2009. Defendant Bilton served as Vice President of Western Canada for the Company from February 5, 2008 to April 29, 2009. Prior to joining Canadian Superior, Defendant Bilton served as President and CEO of Seeker Petroleum.

(f)     Defendants McKenzie, Snethun, Coolen, Noval and Bilton are collectively referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Canadian Superior, were privy to confidential and proprietary information concerning Canadian Superior, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Canadian Superior, as discussed in detail below. Because of their positions with Canadian Superior, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the

- 3 -

Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Canadian Superior's business.

11.    The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

12.    As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the AMEX and the Toronto Stock Exchange ("TSX"), and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Canadian Superior's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Canadian Superior common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct which operated as a fraud or deceit on purchasers of Canadian Superior common

- 4 -

stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Canadian Superior's business, operations and management and the intrinsic value of Canadian Superior common stock; (ii) enabled Individual Defendants Snethun, Bilton and other Company insiders to collectively sell 330,000 shares of their personally-held Canadian Superior common stock for gross proceeds in excess of $900,000; (iii) allowed the Company to raise capital through two private placements which resulted in gross proceeds of over $51 million for the Company; and (iv) caused Plaintiff and members of the Class to purchase Canadian Superior common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Canadian Superior between January 14, 2008 and February 17, 2009, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Canadian Superior common stock was actively traded on the AMEX. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Canadian Superior or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

- 5 -

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Canadian Superior;

(c)     whether the price of Canadian Superior common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

- 6 -

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Canadian Superior describes itself as an oil and gas exploration and production company with operations in Western Canada, offshore Trinidad & Tobago, and offshore Nova Scotia, Canada.

21.     On or about April 3, 2006, Canadian Superior issued its annual report for the year ended December 31, 2005. In the annual report, the Company announced that Canadian Superior had "signed a production sharing contract on July 20, 2005 with the government of Trinidad and Tobago for Block 5(c)" to drill wells offshore Trinidad, Spain, which would commence on or before September or October 2006. The contract called for the drilling of at least five wells over the next three years ("Product Sharing Contract").

22.     Additionally, the Company stated that it had entered into a participation agreement with Challenger Energy to assist in the drilling in Trinidad. The annual report stated that Challenger Energy will "participate on a promoted basis, paying a third of Canadian Superior's Block 5(c) exploration program to obtain 24% of Canadian Superior's revenue share of these prospects" (the "Participation Agreement").

23.     Challenger Energy is a Canadian based oil and gas exploration company. Defendant Noval served as Chairman of the board of directors for Challenger Energy from 2004 until October 23, 2008, when he purportedly resigned for "personal reasons." According to Challenger Energy's annual report, Form 20-F/A, filed on January 23, 2009, for year ended December 31, 2007, Defendant Noval is a significant shareholder of Challenger Energy ("2007 Form 20-F/A"). The 2007 Form 20-F/A stated that "Challenger and Canadian Superior may rely on common personnel." Additionally, the 2007 Form 20-F/A stated "[a]s a result, potential conflicts of interest could arise

- 7 -

when these people are faced with decisions that could have different implications for Challenger and

Canadian Superior."

24.     On November 14, 2006, Canadian Superior issued a press release announcing that it

would be drilling its third back-to-back well to be drilled in Trinidad. With regard to the Company's

wells in Trinidad, Defendant Noval stated, in pertinent part, as follows:

> We are very excited about commencing drilling in Trinidad and Tobago and this
> multi-well program. As the most industrialized country in the Caribbean, Trinidad
> and Tobago's business environment has several advantages, including a good oil and
> gas fiscal regime, a well-educated labour force, good transportation and
> communication links, a strong legal system, a well entrenched stable democratic
> system of government, a soundly-regulated financial system and a very successful
> and growing oil and gas industry that accounts for approximately 50% of total
> government revenue. This combined with successful ongoing oil and gas exploration
> and development makes Offshore Trinidad one of the most coveted oil and gas
> basins in the world today. Offshore Trinidad is a 'World Class' basin with multiple
> large exploration and development opportunities as evidenced by recent drilling and
> development successes in the Columbus Basin, as well as having well developed, and
> developing liquefied natural gas ('LNG') facilities and capacity, and ready access to
> international markets. Trinidad is the fifth largest exporter of LNG in the world and
> approximately 80% of North America's LNG is supplied from Trinidad. We are
> looking forward to being part of that industry.

25.     On April 24, 2007, Canadian Superior issued a press release stating that it had

released a detailed message to all its shareholders, investors and attendees at the Independent

Petroleum Association of America. With regard to the Company's wells in Trinidad, Defendant

Noval stated, in pertinent part, as follows:

> We will be commencing drilling of three (3) back-to-back wells on our "Intrepid"
> Block 5(c) approximately 60 miles off the east coast of Trinidad on three (3) separate
> and distinct prospects, each having multi-tcf potential, with the first prospect named
> "Victory", followed by our "Bounty" and "Endeavour" Prospects. *The
> commencement of drilling on the "Victory" Prospect within the next 7 or 8 weeks
> in one of the most coveted and best oil and gas plays in the world*, and the towing of
> the rig to Trinidad will start within the next 3 weeks according to the operator of the
> rig A. P. Moller - Maersk A/S. Canadian Superior has contracted the Kan Tan IV
> semi-submersible drilling rig for the drilling of all three (3) initial wells, at very
> favorable drilling rates. The drilling rig is operated by A.P. Moller – Maersk A/S
> headquartered in Copenhagen, Denmark which trades on the Copenhagen Stock
> Exchange and owned by SINOPEC, of Beijing, China, the 3rd largest company in

China which trades on the New York Stock Exchange under the stock symbol. [Emphasis added.]

26.    On June 25, 2007, Canadian Superior issued a press release announcing that it

commenced drilling of its Victory well on the Intrepid Block 5(c). With regard to the Victory well,

Defendant Noval stated, in pertinent part, as follows:

> We are very excited to commence the drilling of the "Victory" well approximately 60 miles (96 kilometers) off the east coast of Trinidad. The well is offsetting production from some of the biggest producing natural gas wells in the world. Thanks to a great combination of a lot of efforts from our supporters, staff, SINOPEC, Maersk and the Government of Trinidad and Tobago, drilling of the "Victory" well has commenced!

27.    On July 3, 2007, Canadian Superior and Challenger Energy jointly issued a press

release announcing that "the Victory well on Canadian Superior's Intrepid Block 5(c) offshore

Trinidad had been spudded and the drilling of the main section of the well has commenced after

successfully completing the drilling and casing of the 36 inch surface (top) section of the well."

With regard to the Victory well, Defendant Coolen stated, in pertinent part, as follows:

> We are pleased to commence drilling of the main sections of the 'Victory' well after having completed drilling and casing the 36" surface (top) section of the 'Victory' well to a depth of 1,094 ft (333.5 m) subsea. Conductor casing (30 inch) has been run and is cemented in place. The 36" surface (top) section was completed after spending 2 1/2 days drilling a 12 1/4 " offsetting test pilot hole at the 'Victory' location to ensure proper selection of upper casing points and proper operation of the Kan Tan IV semi-submersible drilling rig that we are using on the well. The Kan Tan IV is drilling the 'Victory' well in approximately 806 feet (246 m) of water about 60 miles (96 kilometers) off the east coast of Trinidad.

28.    On August 8, 2007, Canadian Superior and Challenger Energy jointly issued a press

release that the Victory well had "reached a total depth of 6,711 feet (sub-sea)," "drilling was

proceeding full steam ahead" and the Victory well is about to "commence evaluating several

potential prospective natural gas horizons." With regard to the Victory well, Defendant Coolen

stated, in pertinent part, as follows:

- 9 -

We are all very pleased to be at this point in the drilling of this exploration well on the 'Victory' prospect. The drilling of this high risk high reward prospect in one of the most coveted basins in the world today is very exciting and may have a significant impact on our company. We and our financial partner, Challenger Energy Corp., look forward to drilling into the potential prospective natural gas horizons in the 'Victory' well over the next few weeks.

29. On August 16, 2007, Canadian Superior and Challenger Energy jointly issued a press release announcing that BG International Limited ("BG") entered into a farm-in agreement ("Farm-In Agreement") and joint operating agreement ("Joint Operating Agreement") with Canadian Superior to participate in the exploration drilling and development of the Intrepid Block 5(c) (the "Joint Venture"). Under the terms of the Farm-In and Joint Operating agreements, BG acquired a "30% working interest in Canadian Superior's Intrepid Block 5(c) Production Sharing Contract." Under the terms of the agreement with Canadian Superior, BG will pay Canadian Superior "approximately $39 million and, on a go forward basis, pay 40% of the exploration costs associated with the drilling of the three commitment wells required on the Block 5(c)." Challenger Energy also entered into the Joint Operating Agreement with Canadian Superior and BG. The press release reported that Challenger Energy is paying 33.33% of the costs of the three well exploration program to earn a 25% interest in the Intrepid Block 5(c) while Canadian Superior is paying 26.67% of the costs to maintain a 45% interest. With regard to the Farm-In Agreement and the Joint Operating Agreement, Defendant Noval stated, in pertinent part, as follows:

We are very pleased to announce that a company of BG's stature has joined us in the exploration drilling and development of Block 5(c). With the funding provided by BG and Canadian Superior's other partner Challenger Energy Corp., Canadian Superior will be paying only 26.67% of the costs of the three well exploration program and will retain a 45% interest in Block 5(c); with BG acquiring a 30% interest and Challenger acquiring a 25% interest in the "Intrepid" Block. BG Group is an established major gas producer world-wide and in Trinidad and brings a wealth of knowledge, experience and liquefied natural gas ("LNG") marketing strengths to this joint venture. The "Intrepid" Block 5(c) has multi-TCF potential and is located in one of the most coveted oil and gas plays in the world. It has been a pleasure putting this transaction together with BG and we look forward to working together on this exciting project.

- 10 -

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

30.      The Class Period begins on January 14, 2008. On that date, Canadian Superior issued

a press release announcing that it made a natural gas discovery on their Intrepid Block 5(c) with the

Company's partners: BG and Challenger Energy.   In that regard, Defendant Noval stated, in

pertinent part, as follows:

> We are pleased to announce the discovery of natural gas on our first well offshore
> Trinidad. We have just finished the successful flow testing of the first zone to be
> completed on our "Victory" well, which is part of an initial 3 well exploration
> program offshore Trinidad on our 'Intrepid' Block 5(c). *We are encouraged by the
> initial test results in the first zone and will be moving up hole in the well to test at
> least one further horizon.* [Emphasis added.]

Defendant McKenzie added, in pertinent part, as follows:

> The 'Victory' well has an estimated flowing rate of over 100 mmscf/d of natural gas
> and is condensate rich. We have just completed the extended flow testing of the first
> zone to be tested in the well which was flowed on a restricted flow basis with high
> pressures and flowed with measured flow rates averaging between 40 and 45
> mmscf/d. The well also tested high gravity condensate of approximately 30 bbl per
> mmscf of gas produced. The flowing wellhead pressure on a restricted basis and
> bottom hole pressures are comparable or better than other producing wells and fields
> in the immediate area. Further analysis of the initial test results will be conducted on
> the information we have received and we will now focus on the next stage of the
> testing program by moving up hole to complete at least one more zone in the well
> before moving the rig to our next prospect on Block 5(c) and spudding the 'Bounty'
> well. This information will allow Canadian Superior and the other participants in the
> well to move forward with detailed reserve analysis of the discovered resource."

31.      On January 28, 2008, Canadian Superior issued a press release announcing that

Canadian Superior and its partners, BG and Challenger Energy "discovered natural gas in a second

zone in the Victory well on Intrepid Block 5(c)." Canadian Superior and its partners stated that they

"have identified possible further prospective horizons in the 'Victory' well that will be evaluated in

other wells planned for the area."   In that regard, Defendant McKenzie added, in pertinent part, as

follows:

- 11 -

*We are very pleased with the natural gas tests from our 'Victory' well on Block 5(c) offshore Trinidad.* Although drilling of the 'Victory' well took longer than initially anticipated, we feel the results were well worth waiting for. Operational improvements on the Kan Tan IV semi-submersible drilling rig have been made and we look forward to continuing our initial 3 well exploration program on "Intrepid" Block 5(c) with the spudding of the second well called 'Bounty', expected to occur prior to mid-February. [Emphasis added.]

32.    On February 4, 2008, Canadian Superior announced that Canadian Superior and its partners, BG and Challenger Energy, "intend to move the Kan Tan IV semi-submersible drilling rig currently located at the Victory well to the Bounty well on their Intrepid Block 5(c) within the next seven days." With regard to the Victory well, Defendant McKenzie commented, in pertinent part, as follows:

I am pleased to report that we have now analyzed and evaluated much of the initial data from the 'Victory' well, and, at this time, Canadian Superior estimates that the 'Victory' well contains approximately 725 feet of gross pay (450 feet of net pay). Based on well log information, other discoveries in the area, seismic data and flow testing results, we estimate on a preliminary basis that the 'Victory' discovery contains up to 1.1 tcf gross natural gas sales reserves with associated liquid natural gas of 3.70 million barrels, with the most likely case being 615 bcf gross sales reserves with associated natural gas liquids of 2.37 million barrels. The 'Victory' well tested natural gas in two main formations and Canadian Superior estimates that the 'Victory' well is capable of producing at flowing rates of over 100 mmscf/d from the lower zone which was the first formation tested; in addition, we estimate that the well is capable of flowing up to 50 mmscf/d from the second formation.

33.    The statements referenced above in ¶¶30-32 were materially false and misleading when made because they misrepresented and failed to disclose that testing on the Victory well indicated that there were only limited reserves connected to the well and, consequently, that the Victory well will likely be a sub-economic discovery. As a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Victory well.

34.    On February 20, 2008, Canadian Superior issued a press release announcing that the Company along with its partners, BG and Challenger Energy have "successfully spudded the Bounty

well on the Intrepid Block 5(c)." With regard to the Bounty well, Defendant McKenzie stated, in

pertinent part, as follows:

> I am pleased to report that we have commenced drilling the 'Bounty' well and based
> on analysis of reprocessed 3D seismic covering the area and offsetting well data,
> including that of nearby producing fields, the primary objective of the 'Bounty' well
> is to prove up higher pressure horizons that includes multiple potential reservoirs and
> is a deeper, separate geologic structure from that discovered in the 'Victory' well.
> Secondary objectives include possibly drilling into at least one of the productive
> horizons penetrated in the 'Victory' well.

35.     On March 31, 2008, Canadian Superior issued a press release announcing its financial

and operating results for the year ended December 31, 2007.  With regard to the Victory well, the

press release stated, in pertinent part, as follows:

> Subsequent to year end Canadian Superior had a large natural gas discovery in
> Trinidad. Completed the drilling of its "Victory" well, "Intrepid" Block 5(c),
> offshore Trinidad, a natural gas discovery; and, two zones were successfully
> completed in the "Victory" well.  The first zone tested natural gas on a restricted
> basis at high pressure rates averaging between 40 and 45 mmcf/d; and, the second
> zone, which was tested independently and separate from the first zone, tested natural
> gas on a restricted basis at high pressure rates averaging in excess of 30 mmcf/d.
> Canadian Superior and its partners have identified possible further prospective
> horizons in the "Victory" well that will be evaluated in other wells planned for the
> area. . .

Moreover, Defendant McKenzie, commenting on the financial results, stated, in pertinent part, as

follows:

> Our 2007 physical and financial results demonstrate the strength and delivery of our
> corporate objective, which is to exponentially grow the business through high-impact
> international exploration programmes and expansion of our Western Canada core
> assets through focused drilling and selective, accretive acquisitions. ***We carried out
> the drilling of our 'Victory' well offshore Trinidad in 2007 as the first of a three-
> well series, which yielded a successful natural gas discovery in this multi-TCF
> play. Now we are drilling the 'Bounty' well, and later in 2008, we will drill
> 'Endeavour' as the third well in this series.*** In Western Canada, we surpassed our
> 2007 exit production rate of over 3,000 boe/d and now we are focused on our mid-
> year 2008 target of 5,000 boe/d, but more importantly we have an aspiration to
> achieve 10,000 boe/d before year end so that more of our international growth is
> funded from internal cash flows. At the same time our objective is to provide our
> shareholders significant growth in per share value. [Emphasis added.]

- 13 -

Lastly, with regard to the Company's operational update for Trinidad and Tobago, the press release

stated, in pertinent part, as follows:

> On July 20, 2005, Canadian Superior signed a PSC for the 80,020 acre "Intrepid" Block 5(c), offshore Trinidad and Tobago, with the Government of the Republic of Trinidad and Tobago. The PSC provides Canadian Superior the right to explore on "Intrepid" Block 5(c). The "Intrepid" Block 5(c) is located approximately 96 kilometers (60 miles) off the east coast of the island of Trinidad with water depths in the range of 150m to 450m (500 to 1,500 feet). The three "Intrepid" Block wells will evaluate three large separate potential hydrocarbon bearing structures that have been delineated by extensive 3D seismic over the entire "Intrepid" Block 5(c) that Canadian Superior has evaluated and interpreted. The first well commenced drilling shortly after the Kan Tan IV had completed a scheduled refurbishment in Brownsville, Texas. On May 11, 2007 the Kan Tan IV was towed out of the port of Brownsville, Texas, en route to the port of Chaguaramus in Trinidad to load up supplies and finalize drilling preparations and was then moved to the first drilling location on the "Victory" Prospect arriving on site June 19, 2007. The first well on the "Intrepid" Block 5(c) was on the "Victory" Prospect, the second and third wells are planned for the "Bounty" and "Endeavour" prospects.

> On June 25, 2007, the drilling of a pilot hole at the "Victory" well site commenced. Following that drilling and evaluation, the main well bore was spudded on June 29, 2007. On August 30, 2007, the "Victory" well site reached Total Depth of 16,621 feet (subsea) and due to difficulties encountered the lower portion of the well was re-drilled to a total depth of 16,150 feet. On December 17, 2007, the Corporation announced that it had unanimously agreed with its partners to case and conduct flow tests on the "Victory" well.

> The "Victory" natural gas discovery tested natural gas in two main formations and the Corporation estimates that the well is capable of producing at sales gas flow rates of well over 100 mmcf/d from the lower zone alone, which was the first formation tested. In addition, the Corporation estimates that the well is capable of flowing over 50 mmcf/d from the second formation flow tested. Both zones were tested at restricted rates and had high flowing pressures.

> On February 20, 2008, the Corporation successfully spudded the "Bounty" well with the Kan Tan IV semi-submersible drilling rig. The rig has moved approximately 2.2 miles from the "Victory" well. The "Bounty" well is planned to be drilled to a total vertical depth of approximately 18,000 feet subsea in about 1,000 feet of water and is expected to take about 110 days to drill. It is expected that the "Bounty" well and the third well, "Endeavour", will both be drilled and evaluated by year end 2008.

36. On May 14, 2008, Canadian Superior issued a press release announcing its financial

and operating results for the three months ended March 31, 2008 ("Q12008"). Defendant McKenzie,

commenting on the Company's financial results, stated, in pertinent part, as follows:

Our corporate objective is to remain focused on adding shareholder value with high
impact offshore exploration in Trinidad, combined with growing cash flow from
Western Canada. We are pleased to report that in the First Quarter of 2008 our
average daily production, oil and gas revenues and cash flow from operations have
all increased over the same period in 2007. We expect for the remainder of this year
will be very exciting and rewarding for Canadian Superior shareholders.

With regard to the Company's operational update for Trinidad and Tobago, the press release stated,

in pertinent part, as follows:

In January 2008, Canadian Superior announced a large natural gas discovery in
Trinidad. Successfully drilled its "Victory" well, "Intrepid" Block 5(c), offshore
Trinidad, a natural gas discovery; with two zones successfully production tested.
The first zone tested natural gas on a restricted basis at high pressure rates averaging
between 40 and 45 mmcf/d; and, the second zone, which was tested independently
and separate from the first zone, tested natural gas on a restricted basis at high
pressure rates averaging in excess of 30 mmcf/d. The combined two zones could
produce natural gas at estimated rates of over 100 mmcf/d, with the first zone being
condensate rich.

On February 20, 2008, the Company successfully spudded the "Bounty" well with
the Kan Tan IV semi-submersible drilling rig. The rig had moved approximately 2.2
miles from the "Victory" well. The "Bounty" well is planned to be drilled to a total
vertical depth of approximately 18,000 feet subsea in about 1,000 feet of water and is
expected to take about 110 days to drill. It is expected that the "Bounty" well and the
third well, "Endeavour" will both be drilled and evaluated by year end 2008.

On May 7, 2008 the Company reported that the Bounty well was poised to reach
final Total Depth ("TD") of about 18,000 feet in approximately 30 days. The
Company just completed drilled the 12-1/4" hole section in the well to a total depth
of 14,415 feet subsea. The primary objective of the Bounty well is to prove up the
presence of potential multi-TCF reservoirs which are deeper, and higher pressure
then the Victory discovery.

37. On June 26, 2008, Canadian Superior issued a press release announcing the "logging

of zone of interest in "Bounty" well offshore Trinidad." In that regard, Defendant McKenzie stated,

in pertinent part, as follows:

- 15 -

The wireline logging operations are still underway, but already wireline logging has shown approximately 200 feet of pay in a developed sand interval that the logs indicate is hydrocarbon bearing. Following the completion of current wireline logging activities, drilling will resume targeting further objectives in the well; flow testing of the zone logged to date is planned thereafter once the well reaches its total depth.

We are very pleased with what we see on the logs that indicate encouraging hydrocarbons prior to fully penetrating all objectives in the well, and we are excited about drilling to our projected TD of approximately 18,000 feet subsea.

38.    On July 9, 2008, Canadian Superior issued a press release announcing that the

Company along with its partners have "unanimously agreed to case and conduct flow testing on the

"Bounty" well located approximately 65 miles off the east coast of the island of Trinidad." In that

regard, Defendant McKenzie stated, in pertinent part, as follows:

We are pleased to move forward with our partners to conduct flow testing on the 'Bounty' well. We have completed the initial drilling of the well to approximately 17,360 feet, along with the wireline logging, and are now proceeding with running casing in preparation for our testing. The testing operation will take approximately 30 days, after which we will then commence operations on our next well, the 'Endeavour', as we continue our initial three well programme on the 'Intrepid' Block 5(c) offshore Trinidad.

39.    On July 16, 2008, Canadian Superior issued a press release announcing that it

"completed the logging and casing of its Bounty well." With regard to the Bounty well, Defendant

McKenzie, commented, in pertinent part, as follows:

We are very pleased that the well has come in high. The running of the 7" casing is now complete and it has been cemented in place; we will now proceed with the testing program to conduct flow test(s), along with pressure build up test(s). The entire testing program will take approximately 30 days, after which we will finalize operations on the well and then prepare for our rig move to our next well, the 'Endeavour', as we continue our initial three well program on the 'Intrepid' Block 5(c) offshore Trinidad.

40.    On August 13, 2008, Canadian Superior issued a press release announcing that it has

made a "significant natural gas discovery with the drilling and production testing of its Bounty

exploration well." With regard to the Bounty well, Defendant Noval commented, in pertinent part, as follows:

> ***We are very pleased with the results of the 'Bounty' well and production testing indicates that we have drilled one of the best natural gas wells offshore Trinidad.*** The 'Bounty' natural gas discovery represents a significant achievement for Canadian Superior and our partners and shows the tremendous opportunities available to the oil and gas industry in Trinidad and Tobago.

Defendant McKenzie added, in pertinent part, as follows:

> The 'Bounty' discovery has met our expectations and has proven up a large high quality natural gas reservoir that in combination with our extensive 3-D seismic data in the area appears to exceed 7,000 acres in size. I am confident the 'Bounty' well will initially produce at approximately 200 mmcf/d of sales natural gas at the anticipated pipeline pressure. This compares favorably with production from the nearest analogous field, Dolphin Deep, where each of the two wells in this field produce at approximately 150 mmcf/d. Given the magnitude of the 'Bounty' discovery, we plan to move forward expeditiously with appraisal and development drilling and production.

41.     The statements referenced above in ¶¶34-37 and 40 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)     that the currently discovered reserves for the Intrepid Block 5(c) block were below the economic threshold for development;

(b)     that the Bounty discovery was not economical to develop on its own; and

(c)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and earnings growth.

42.     On August 15, 2008, Canadian Superior issued a press release announcing its financial and operating results for the three months and six months ended June 30, 2008. With regard to the Intrepid Block 5(c), the press release stated, in pertinent part, as follows:

> Canadian Superior as Operator of the "Intrepid" Block 5(c) offshore Trinidad announced a significant natural gas discovery with the drilling and production testing of its "Bounty" exploration well. The "Bounty" well was drilled to a total depth of

- 17 -

approximately 17,360 feet and encountered gas bearing horizons with the main targeted zone in the well encountering approximately 200 feet of pay. Initial test results indicate that the "Bounty" well is capable of producing at a rate of approximately 200 mmcf/d from this high pressure zone. The results from the "Bounty" well and interpretations of extensive 3-D seismic and other data indicate a natural gas resource potential of up to 2.6 TCF of natural gas from the tested structure. During the testing of the Bounty well, production testing equipment capacity was maximized resulting in flow testing being restricted to a stabilized rate of 60 mmcf/d of natural gas with a flowing bottomhole pressure of 7186 psi. Given the magnitude of the "Bounty" discovery, the Company plans to move forward expeditiously with appraisal and development drilling and production. . .

\*     \*     \*

In Trinidad and Tobago, Canadian Superior will soon mobilize the Kan Tan IV drilling rig to commence operations on the "Endeavour" well, the third in the series on the "Intrepid" Block 5(c).

Defendant McKenzie, commenting on the Company's financial results, stated, in pertinent part, as

follows:

These are exciting and rewarding times for Canadian Superior shareholders. We are very pleased to deliver our best quarterly and half year operations performance ever, as well as achieve repeated exploration success offshore Trinidad. With high-potential exploration continuing offshore Trinidad and our new growth efforts in the northeast US and North Africa building momentum, we believe the best is still to come for our shareholders.

43.     On August 26, 2008, Canadian Superior issued a press release announcing that it

entered into an agreement for a non-brokered private placement offering in the amount of

$35,000,000. Moreover, the Company stated that the proceeds of the offering will be used to fund

Canadian Superior's "exploration spending and new business development activities." The private

placement closed on September 3, 2008.

44.     On September 2, 2008, Canadian Superior announced that the Company successfully

"spudded the Endeavour well."

45.     On September 8, 2008, Canadian Superior issued a press release updating the

"drilling progress at 'Endeavour' Well on "Intrepid" Block 5(c) offshore Trinidad." With regard to

the Endeavor well, Defendant McKenzie stated, in pertinent part, as follows:

> I am pleased to report our good drilling progress at 'Endeavour'. Considering the
> significant exploration success we have already achieved on 'Intrepid' Block 5(c),
> we are excited to be drilling 'Endeavour' and are optimistic that it will meet
> expectations. As in the previous wells, the 'Endeavour' targets a large separate
> structure determined from the analysis and evaluation of extensive 3D seismic. The
> primary objective includes proving up higher pressure horizons like seen in 'Bounty'
> with a secondary objective including at least one of the productive horizons
> penetrated in the 'Victory' well.

46.     On September 17, 2008, Canadian Superior issued a press release stating that it

"successfully drilled the next section of the Endeavour well, the 22 inch hole section, to a depth of

4,739 feet subsea."  With regard to the Endeavour well, Defendant McKenzie stated, in pertinent

part, as follows:

> Our drilling operations on 'Endeavour' are going well. At this rate, we will reach our
> primary target horizons earlier than planned. With the verification of our 3-D seismic
> interpretation that the 'Victory' and 'Bounty' discoveries provided, we remain
> confident that the 'Endeavour' results will become yet another milestone in our
> successes this year.

47.     On October 14, 2008, Canadian Superior issued a press release announcing that it

"successfully [ran] 13-5/8" Casing on Endeavour Trinidad Well."  With regard to the Endeavor well,

Defendant Noval stated, in pertinent part, as follows:

> I'm pleased to report that drilling operations have been going quite well. At this rate,
> we will complete drilling this 12-1/4" section of the well before the end of the 4th
> week in October; to a depth of just over 15,000 feet.

Defendant Coolen added, in pertinent part, as follows:

> One of the main targets for the well is expected to be encountered in the 12-1/4" hole
> section of the well which is currently being drilled; and, with the verification of our
> 3-D seismic interpretation that the 'Victory' and 'Bounty' discoveries have provided,
> we remain confident that the 'Endeavour' results will meet or exceed our
> expectations.

48.    On October 29, 2008, Canadian Superior announced that the Company along with its

partners, BG and Challenger Energy, successfully ran and cemented in place the 9-7/8" intermediate

casing string in the Endeavour well, to a depth of approximately 14,492 feet subsea, and that drilling

will commence in the final hole section in the well.  With regard to the Endeavour well, Defendant

Noval stated, in pertinent part, as follows:

> I am pleased to report that, in just over 2 months from spud, we are now within
> striking distance of final [total depth] on 'Endeavour'; and, will shortly commence
> drilling the final section of this well, the 8-1/2" hole section, roughly 3,600 feet from
> here to final [total depth].  The primary objective of 'Endeavour' is to prove up a
> possible multi – TCF reservoir.  Our 3D seismic based geological prognosis for the
> 'Endeavour' well shows the main target zone to be between our current drilled depth
> and our final TD, which we expect to reach before the end of November.

49.    On November 17, 2008, Canadian Superior issued a press release announcing its

financial and operating results for the three months ("Q3 2008") and nine months ended September

30, 2008 and providing an update on the Endeavour well it is drilling on its Intrepid Block 5(c).

With regard to the Intrepid Block, the press release state, in pertinent part, as follows:

> On August 13, 2008, Canadian Superior announced that it has made a significant
> natural gas discovery with the drilling and production testing of its "Bounty"
> exploration well on its "Intrepid" Block 5(c) offshore Trinidad. The "Bounty"
> exploration well was drilled to a total depth of approximately 17,360 feet and
> encountered gas bearing horizons with the main targeted zone in the well
> encountering approximately 200 feet of pay. Initial test results indicate that the well
> should be capable of producing at a rate of approximately 200 mmcf/d from this high
> pressure zone.  During the testing of the well, production testing equipment capacity
> was maximized, resulting in flow testing being restricted to a stabilized rate of 60
> mmcf/d of natural gas with a flowing bottom hole pressure of 7186 psi;
>
> On August 28, 2008, Canadian Superior announced that it successfully spudded the
> "Endeavour" well, approximately 5.2 miles north from the "Bounty" natural gas
> discovery on its "Intrepid" Block 5(c), planned to be drilled to a total vertical depth
> ("TD") of approximately 18,000 feet subsea.  This well is the 3rd well, in an initial 3
> well program, being drilled by Canadian Superior and its partners on the "Intrepid"
> Block, Block 5(c), located approximately 60 miles offshore, off the east coast of
> Trinidad. "Endeavour" is being drilled on a separate prospect determined from the
> analysis and evaluation of extensive 3D seismic on the "Intrepid" Block 5(c). The
> primary objective of "Endeavour" is to prove up a possible multi-TCF reservoir. The
> Company's 3D seismic based geological prognosis for the "Endeavour" well shows

- 20 -

the main target zone to be between the current drilled depth and final TD, which is expected to be reached by mid-December.

Having reached a depth of 15,617 feet subsea in the final section of the well, due to well bore instability being encountered in the recently drilled hole section from 14,492 to 15,617 feet, the decision was made on November 13, 2008 to pull the bottom hole assembly ("BHA") back up to surface and complete various preparations in order to re-drill that 1,125 feet section with a mechanical sidetrack, prior to drilling to TD. It is expected that the drilling of the mechanical sidetrack will commence early this week.

50.    On November 21, 2008, Canadian Superior announced that it entered into an agreement with Acumen Capital Finance Partners Limited ("Acumen") to issue by way of a private placement 10,322,581 flow-through Canadian Superior shares (the "Shares") in Canada on a firm "bought deal" basis for aggregate gross proceeds of approximately $5,000,000.  The Company reported that it granted Acumen an option, to place prior to close of business November 24, 2008, up to 3,225,807 additional Shares on a "best efforts" basis, at a price of $1.55 per share, for additional gross proceeds of approximately $5,000,000, which would increase the offering to approximately $10,000,000, if fully exercised.  Canadian Superior plans to use the proceeds of the transaction for its drilling operations.

51.    On November 21, 2008, Canadian Superior issued a press release announcing that "due to strong market demand, Canadian Superior has agreed to increase the size of the option under its previously announced financing to increase the size of the total offering from $10,000,000 to $16,000,000."  The private placement closed on December 5, 2008.

52.    On December 8, 2008, Canadian Superior issued a press release updating the status of the "Endeavour" well in offshore Trinidad.  The press release stated the "'Endeavour' well was spudded on August 28, 2008 and is expected to reach its final total depth ("TD") of approximately 18,000 feet prior to the end of December."  With regard to the Endeavour well, Defendant Coolen stated, in pertinent part, as follows:

- 21 -

This mechanical failure of the rig's drilling equipment is untimely and regrettable; particularly, as drilling had progressed to within a few days of reaching the expected final total depth (final "TD") for the well. We expect the rig owner, Sinopec Corp., and their managing contractor, A. P. Moller - Maersk A/S, to safely and efficiently complete this repair with essentially $0 daily rig rate and for the rig to get back to drilling promptly towards the end of this week, so that the drilling and evaluation of the "Endeavour" well can be properly completed.

53.    On December 29, 2008, Canadian Superior issued a press release announcing an update on the Endeavor well. With regard to the Endeavor well, Defendant Coolen stated, in pertinent part, as follows:

The geological data obtained from the drilling to date of 'Endeavour' is very encouraging. When drilling was stopped to replace a worn drill bit, the data indicates that we had encountered, and were still drilling in, the main targeted zone for this well. Logging While Drilling ('LWD') data indicates that we have penetrated the main targeted zone; and, that the 'Endeavour' well has encountered approximately 162 feet of gross reservoir quality sands over a 168 foot interval to this point. While the data in hand is very useful; it is preferable to drill further into the main target zone to better determine the full extent of the reservoir and to obtain additional information, including full wireline logs, to further evaluate the various reservoir parameters and to have timely data in hand for forward scheduling of any possible appraisal work required. The sidetrack drilling is planned to start just as soon as the blowout preventer ("BOP") undergoes a necessary repair to allow drilling to proceed.

54.    On January 23, 2009, Canadian Superior issued a press release announcing that the Company along with its partners, BG and Challenger Energy, are conducting flow testing on the Endeavour well. With regard to the Endeavour well, Defendant Coolen, stated, in pertinent part, as follows:

*We are pleased with what we are learning from 'Endeavour'; not only in terms of this particular well and its related structure, but also in regard to the overall development potential of the entire 'Intrepid' Block 5(c).* Test information from the well is expected to confirm productive characteristics of the reservoir tested and the net pay encountered in the well. *Having information from three successful wells, along with the extensive 3D seismic coverage we have over the block and the nearby fields really makes a difference and encourages us to initiate the further appraisal of resources discovered.* We look forward to completing the running and cementing in place of the 7" liner to facilitate moving forward with the flow testing program. These operations and finalizing all operations on the well will take close to the end of February to complete. At that point, we will have completed the drilling and testing of all three successful wells, 'Victory', 'Bounty' and 'Endeavour', in this

- 22 -

initial three well exploration program on 'Intrepid' Block 5(c) and we will be releasing the drilling rig. We will have more to say on 'Endeavour' and the ongoing development planning for the 'Intrepid' Block 5(c) in the very near future. [Emphasis added.]

55.     On February 10, 2009, Canadian Superior announced that it proposed to "monetize a 25% or larger interest in its Intrepid Block 5(c)." Canadian Superior reported that it is in the process of retaining a financial advisor to assist in the sale of the asset.

56.     The statements referenced above in ¶¶42, 45-49, and 52-54 were each materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

        (a)     that the discovered reserves for the Intrepid Block 5(c) were below the economic threshold for development;

        (b)     that Canadian Superior had notified BG of its intention to commence a corporate sale in November 2008 so that it can overcome its financial constraints that were preventing it from meeting its funding obligations under the Joint Operating Agreement;

        (c)     that Canadian Superior had violated the terms of the Joint Operating Agreement with BG, thus potentially endangering its interest the Joint Venture;

        (d)     that Canadian Superior failed to timely pay Maersk, the drilling operator, and potentially other contractors, thereby jeopardizing the operation of the Joint Venture; and

        (e)     as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and earnings growth.

57.     On February 12, 2009, Canadian Superior issued a press releasing announcing the "appointment, upon the application of BG of an interim Receiver of its participating interest in Intrepid Block 5(c). Pursuant to the Court Order, the Receiver, in conjunction with BG, will operate

- 23 -

the property and conduct the flow testing of the Endeavour well which Canadian Superior believes

will validate its operations to date." The press release continued, in pertinent part, as follows:

> The Court Order allows the Receiver to charge Canadian Superior interest in Block
> 5(c) with an amount up to U.S. $47 million to pay for its share of the costs under the
> joint operating agreement with BG. Canadian Superior will continue with the
> monetization of its interest in Block 5(c) as previously announced and the proceeds
> from any sale will be applied to its share of the costs charged against Block 5(c) and
> to discharge the Receiver.
>
> Canadian Superior questions the motives of BG given the fact that Canadian Superior
> has announced its intention to monetize all or a portion of its interests in Block 5(c).
> The Company has to date under its operatorship drilled and flow tested two (2)
> successful wells and is awaiting results of the flow testing on the third well which
> will validate our operations on the Block. Expenditures to date on this three (3) well
> program have totaled approximately U.S. $290 million. Canadian Superior believes
> there is a significant surplus value in its interests well in excess of its obligations.
> Canadian Superior has instructed its legal counsel to pursue all available legal
> remedies including an appeal.

58.    In response to the February 12, 2009 announcement, shares of the Company's stock

fell $0.40 per share, or 44%, from a close of $0.90 per share on February 11, 2009, the last trading

date before the announcement, to close at $0.50 per share, on extremely heavy trading volume.

59.    Then, on February 17, 2009, Canadian Superior issued a press release announcing

that it had received a demand letter from the Canadian Western Bank ("Canadian Western") for

repayment of all amounts outstanding under Canadian Superior's $45 million credit facility with the

Bank by February 23, 2009. The Company also announced that it is in discussions with alternative

lenders.

60.    In response to the February 17, 2009 announcement, shares of the Company's stock

fell $0.16 per share, or 30%, from a close of $0.54 per share on February 13, 2009, the last trading

date before the announcement, to close at $0.38 per share, on extremely heavy trading volume.

61.    On February 20, 2009, Canadian Superior issued a press release announcing that it

entered into an agreement with Scotia Waterous (USA) Inc. ("Scotia Waterous") under which Scotia

Waterous will immediately commence to act as advisor to the Company for the sale of a 25% or larger interest in its Intrepid Block 5(c).

62.     On February 23, 2009, Canadian Superior issued a press release announcing that it reached an agreement with the Canadian Western whereby the demand for repayment of all amounts outstanding under Canadian Superior's $37.5 million credit facility with Canadian Western by February 23, 2009 has been extended to February 27, 2009. The press release stated that the credit facility was reduced last week with a payment of approximately $9 million made to Canadian Western by the Company. The Company announced that negotiations were continuing between the parties concerning the orderly repayment of the credit facility and among the services provided under the advisory agreement.

63.     On March 5, 2009, Canadian Superior issued a press release announcing that it filed an application with the Court of Queen's Bench of Alberta for an order allowing the Company to prepare a plan of arrangement for its creditors, and staying all claims and actions against the Company and its assets. Additionally, the Company reported that the issuance of a court order granting CCAA protection will not change the Company's previously announced decision to sell an undivided 25% or larger interest in its Intrepid Block 5(c).

64.     On March 11, 2009, Canadian Superior issued a press release confirming that NYSE Alternext US LLC (the "Exchange" or "NYSE Alternext US") has halted trading in its common shares on March 5, 2009.

65.     On April 27, 2009, the board of directors of Canadian Superior issued a press release announcing the departure of Defendant Noval as Executive Chairman of the Company and Defendant Coolen as President and CEO of the Company.

- 25 -

66. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Canadian Superior common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

67. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Canadian Superior's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Canadian Superior and its business, prospects and operations, thus causing the price of Canadian Superior common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

68. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of

- 26 -

information reflecting the true facts regarding Canadian Superior, their control over, and/or receipt and/or modification of Canadian Superior's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Canadian Superior, participated in the fraudulent scheme alleged herein.

69.     Defendants were motivated to engage in this course of conduct in order to allow Canadian Superior to benefit from the closing of two private placements that the Company offered on August 26, 2008 and November 21, 2008, for total gross proceeds of $16,000,000 and $35,000,000, respectively. Additionally, Defendants were motivated to engage in this course of conduct in order to allow certain Company insiders to collectively sell more than 330,000 shares of their personally-held Canadian Superior common stock for gross proceeds of approximately $908,747(CAD). The insider shares sold during the Class Period are set forth more fully in the following chart:

| Insider Name | Date | Shares | Price | Proceeds (CAD) |
|---|---|---|---|---|
| **Bilton, Leigh** | 04/07/08 | 15,000 | $3.11 | $46,724 |
|  | 04/07/08 | 15,177 | $3.21 | $48,689 |
|  | 09/08/08 | 8,400 | $3.75 | $31,500 |
|  | 09/16/08 | 100,000 | $2.98 | $297,710 |
| **Total** |  | 138,577 |  | $424,623 |
|  |  |  |  |  |
| **Snethun, Leif** | 09/30/08 | 22,900 | $2.64 | $60,456 |
|  | 10/01/08 | 44,400 | $2.60 | $115,440 |
|  | 10/02/08 | 36,000 | $2.40 | $86,400 |
|  | 10/03/08 | 89,809 | $2.47 | $221,828 |
| **Total** |  | 193,109 |  | $484,124 |

## Loss Causation/Economic Loss

70.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of Canadian Superior's common stock and operated as a fraud or deceit on Class Period purchasers of Canadian Superior common stock. When Defendants' prior misrepresentations and fraudulent conduct were

- 27 -

disclosed and became apparent to the market, the price of Canadian Superior common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Canadian Superior common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

71.     Defendants' false and misleading statements had the intended effect and caused Canadian Superior's common stock to trade at artificially inflated levels throughout the Class Period.

72.     As a direct result of Defendants' disclosures set forth above, the price of Canadian Superior common stock fell precipitously. These drops removed the inflation from the price of Canadian Superior common stock, causing real economic loss to investors who had purchased Canadian Superior common stock during the Class Period.

73.     The declines in the price of Canadian Superior common stock after the disclosures came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price declines in Canadian Superior common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Canadian Superior common stock and the subsequent significant decline in the value of Canadian Superior common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance: Fraud on the Market Doctrine

74.     At all relevant times, the market for Canadian Superior common stock was an efficient market for the following reasons, among others:

- 28 -

(a)    Canadian Superior common stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated market;

(b)    as a regulated issuer, Canadian Superior filed periodic public reports with the SEC;

(c)    Canadian Superior regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Canadian Superior was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

75.    As a result of the foregoing, the market for Canadian Superior common stock promptly digested current information regarding Canadian Superior from all publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all purchasers of Canadian Superior common stock during the Class Period suffered similar injury through their purchase of Canadian Superior common stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

76.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially

- 29 -

from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Canadian Superior who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

79.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

80.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Canadian Superior common stock. Plaintiff and the Class would not have purchased Canadian Superior common stock at the prices they paid, or at

- 30 -

all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

81. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Canadian Superior common stock during the Class Period.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act**
**Against All Defendants**

82. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83. The Individual Defendants acted as controlling persons of Canadian Superior within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Canadian Superior and their ownership of Canadian Superior stock, the Individual Defendants had the power and authority to cause Canadian Superior to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: December 9, 2009

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
CAROLINA C. TORRES

_____
       SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

HOLZER HOLZER & FISTEL, LLC
MICHAEL I. FISTEL, JR.
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone: 770/392-0090
770/392-0029 (fax)

DYER & BERENS LLP
JEFFREY A. BERENS
300 East 17th Avenue, Suite 300
Denver, CO 80203
Telephone: 303/861-1764
303/395-0393 (fax)

*Attorneys for Plaintiff*

- 32 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/share |
|---|---|---|---|
| SNG | 12/8/08 | 1450 | $1.01 |
|  | 12/12/08 | 1530 | $1.00 |
|  | 12/15/08 | 1750 | $1.05 |
|  | 12/16/08 | 1850 | $1.02 |
|  | 12/18/08 | 2400 | $1.02 |
|  | 1/9/09 | 2075 | $1.14 |
|  | 1/15/09 | 1020 | $.98 |
|  | 1/30/09 | 1030 | $.95 |
|  | 2/5/09 | 270 | $.92 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/share |
|---|---|---|---|
| SNG | 12/11/08 | 1450 | $1.11 |
|  | 12/15/08 | 1530 | $1.10 |
|  | 12/16/08 | 1750 | $1.07 |
|  | 12/17/08 | 1850 | $1.07 |
|  | 12/22/08 | 300 | $1.05 |
|  | 1/2/09 | 2100 | $1.06 |

5.      During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12ᵗʰ day of NOV , 2009 in Matawan                , N.J             .
                                                        City                          State

(Signature) X