UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SGALAMBO, Individually And On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CRAIG MCKENZIE, LEIF SNETHUN, MICHAEL E. COOLEN, GREGORY S. NOVAL and LEIGH BILTON,

Defendants.

Civil Action No. 09-cv-10087-SAS

**MEMORANDUM IN SUPPORT OF THE MOTION OF THE KRAMER FAMILY INVESTMENT PARTNERSHIPS GROUP TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES……………………………………………………………….ii

PRELIMINARY STATEMENT………………………………………………………………1

PROCEDURAL BACKGROUND……………………………………………………………2

STATEMENT OF FACTS……………………………………………………………….2

ARGUMENT……………………………………………………………………………7

I. THE KFIP GROUP SHOULD BE APPOINTED LEAD PLAINTIFF………………………………………………………………7

A. The Procedural Requirements Pursuant to the PSLRA………………………..7

B. The KFIP Group Is "The Most Adequate Plaintiff"……….……………………..8

1. The KFIP Group Has Complied With The PSLRA And Should Be Appointed Lead Plaintiff……………………..8

2. The KFIP Group Has The Largest Financial Interest………………… 9

3. The KFIP Group Satisfies The Requirements Of Rule 23……………9

i. The KFIP Group's Claims Are Typical Of The Claims Of All The Class Members………………………………………..10

ii. The KFIP Group Will Adequately Represent The Class……………………………………………………….11

4. The KFIP Group is an Appropriate Group……………………………12

II. THE COURT SHOULD APPROVE THE KFIP GROUP'S CHOICE OF LEAD COUNSEL……………………………………………...14

CONCLUSION……………………………………………………………………..14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999)..……..13

*Daniels v. City of N.Y.*, 198 F.R.D. 409 (S.D.N.Y. 2001)................................................ 10

*In re Drexel Burnham Lambert Group*, 960 F.2d 285 (2d Cir. 1992) ............................. 10

*Ferrari v. Impath*, No. 03-c 2004, U.S. Dist. LEXIS 13898
(S.D.N.Y. July 15, 2004)........................................................................................ 10

*Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996) ..................................... 7

*In re Landry's Seafood Rest., Inc.*, No. 99-1948, 2000 U.S. Dist. LEXIS 7005
(S.D. Tex. Mar. 30, 2000)………………………………………………...........13

*Lax v. First Merchs. Acceptance Corp.*, No. 97-2715,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)......................................... 7

*In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000)...…...............13

*In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) ……………...13

*In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ............. 9, 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
No. 02-8264, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004).............................. 7

*Sczensy Trust v. DiCamillo*, 223 F.R.D. 319 (S.D.N.Y. 2004)........................................ 10

*Sofran v. Labranche & Co.*, 220 F.R.D. 398 (S.D.N.Y. 2004).......................................... 9

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999).……………..13

*In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270
(N.D. Cal. Aug. 20, 2001)………..……………..…………………...…………12

*In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401 (S.D. Tex. 2000)……………..13

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248
(S.D.N.Y. 2003) ....................................................................................... 10

*Wilder v. Bernstein*, 499 F. Supp. 980 (S.D.N.Y. 1980)................................................. 10

*Winn v. Symons Int'l Group*, No. 00-0310, 2001 U.S. Dist. LEXIS 3437 (S.D. Ind. Mar. 21, 2001)....................13

**FEDERAL STATUTES**

15 U.S.C. § 78u-4....................passim

Fed. R. Civ. P. 23....................passim

## PRELIMINARY STATEMENT

The Kramer Family Investment Partnerships Group ("KFIP Group" or "Movant"),[1] a small, cohesive group of 3 members, submits this memorandum in support of its motion: (1) to be appointed Lead Plaintiff in this Action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) for approval of its selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven"), as Lead Counsel for Lead Plaintiff and the Class.

As described in the Consolidated Schedule of Transactions and Losses for the KFIP Group attached to the Declaration Of David A.P. Brower In Support Of The Motion Of The Kramer Family Investment Partnerships Group To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel ("Brower Decl."), at Exhibit B, the KFIP Group has suffered a loss of $397,096.03 as a result of its members purchases of shares of Canadian Superior Energy, Inc ("Canadian Superior" or "Company") common stock between January 14, 2008 and February 17, 2009, inclusive (the "Class Period"). To the best of its knowledge, the KFIP Group has sustained the largest loss of any investor seeking to be appointed Lead Plaintiff in this Action.

In addition to evidencing the largest financial interest in the outcome of this litigation, the KFIP Group's members' Certifications, through Jeffrey Kramer, the general partner, evidence their intent to serve as Lead Plaintiff in this litigation, including their cognizance of their duties of serving in that role.[2] The members of the KFIP Group fully understand their duties and

---

[1] The KFIP group consists of Hunter Investment Properties, Northeast Investment Properties and Vermont Capital Investors.

[2] The PSLRA authorizes any member or group of members of the putative Class seeking to be

responsibilities to the proposed class (the "Class"), and are willing and able to oversee the vigorous prosecution of this Action. The KFIP Group is presumptively the "most adequate plaintiff."

**PROCEDURAL BACKGROUND**

*Sgalambo v. McKenzie, et al.*, 09-cv-10087-SAS ("*Sgalambo*" Action) was filed on December 9, 2009 in this Court. Pursuant to 15 U.S.C. § 78u-4(a)(3)A)(i), on December 9, 2009, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (February 8, 2010). *See* Brower Decl., Exhibit C.

The KFIP Group is a member of the Class (*see* Brower Decl., Exhibit A) and it has timely moved within the 60 day period following publication of the December 9, 2009 notice as required for appointment as Lead Plaintiff under the PSLRA.

**STATEMENT OF FACTS[3]**

Canadian Superior is a company that engages in the exploration, acquisition, development and production of petroleum and natural gas, and liquefied natural gas projects primarily in western Canada, offshore Trinidad and Tobago, the United States, and North Africa. The Company is not named as a defendant in the action because it sought protection under Canadian bankruptcy and reorganization laws and has recently reorganized.

On August 16, 2007, Canadian Superior and Challenger Energy jointly announced in a

---

appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Copies of the sworn Certifications of each member of the KFIP Group reflecting their transactions in Canadian Superior stock during the Class Period are attached collectively as Exhibit A to the Brower Declaration.

[3] This Statement of Facts is taken from the allegations contained in the complaint filed in the *Sgalambo* Action.

press release that BG International Limited ("BG") entered a farm-in agreement ("Farm-In Agreement") and joint operating agreement ("Joint Operating Agreement") with Canadian Superior to participate in the exploration drilling and development of the Intrepid Block 5(c) offshore Trinidad (the "Joint Venture"). The Farm-In and Joint Operating Agreements gave BG a 30% working interest in the Company's Intrepid Block 5(c) and called for BG to pay Canadian Superior approximately $39 million and 40% of the future exploration costs associated with the drilling of the wells required on the Block. Further, Challenger Energy, under the Agreements, would pay 33.33% of the costs of the well exploration program to obtain a 25% interest in the Block and Canadian Superior would pay 26.67% of the costs to maintain a 45% interest.

On or about January 14, 2008, the Company announced it had made a natural gas discovery on the Intrepid Block 5(c). Later, on or about January 28, 2008, the Company also announced the discovery of natural gas in a second zone on the Block and "identified possible further prospective horizons in the 'Victory' well and other wells planned for that area." On or about February 4, 2008, the Company announced that it, along with BG and Challenger Energy, intended to move its drilling rig from the Victory well to the Bounty well on the Intrepid Block 5(c). On or about February 20, 2008, the Company announced that the Company and its partners had "successfully spudded the Bounty well on the Intrepid Block 5(c)."

On or about March 31, 2008, the Company issued a press release announcing its financial and operating results for the year ended December 31, 2007. On or about May 14, 2008, Canadian Superior issued a press release announcing its financial and operating results for the three months ended March 31, 2008. On or about June 26, 2008, Canadian Superior issued a press release announcing the "logging of zone of interest in 'Bounty' well offshore Trinidad." On or about July 9, 2008, Canadian Superior issued a press release announcing that the Company

and its partners agreed to case and conduct flow testing on the Bounty well. Then, on or about July 16, 2008, Canadian Superior issued a press release announcing that it "completed the logging and casing of its Bounty well." On or about August 13, 2008, Canadian Superior issued a press release announcing it had made "a significant natural gas discovery with the drilling and production testing of its Bounty exploration well." On or about August 15, 2008, the Company issued a press release announcing its financial and operating results for the three and six month ended June 30, 2008. On or about August 26, 2008, the Company issued another press release announcing that it had entered an agreement for a non-brokered private placement offering in the amount of $35 million with the proceeds of the offering to be used to fund "exploration spending and new business development activities."

On or about September 2, 2008, the Company announced it had successfully "spudded the Endeavor well." On or about September 8, 2008, the Company publicly announced its "good drilling progress at 'Endeavor.'" On or about September 17, 2008, Canadian Superior stated that it "successfully drilled the next section of the Endeavor well." On or about October 14, 2008, the Company announced in a press release that it "successfully [ran] 13-5/8" casing on Endeavor Trinidad well. On or about October 29, 2008, the Company announced that it, along with its partners, "successfully ran and cemented in place the 8-7/8" intermediate casing string in the Endeavor well and that drill would commence in the final hole section in the well.

On or about November 17, 2008, the Company issued a press release announcing its financial and operating results for the three months and nine months ended September 30, 2008 and provided an update on the Endeavor well on the Intrepid Block. On or about November 21, 2008, the Company announced it entered an agreement with Acumen Capital Finance Partners Limited ("Acumen") to issue by way of a private placement 10,322,581 flow-through Canadian

Superior shares in Canada on a firm "bought deal" basis for aggregate gross proceeds of approximately $5 million, and granted an additional option to Acumen that could result in another $5 million in proceeds. All the proceeds were to be used for its drilling operations. On or about November 21, 2008, the Company announced that it had agreed to increase the size of the option from $10 million to $16 million. On or about December 8, 2008, the Company issued a press release updating its progress on Endeavor which was scheduled to reach its final depth on August 28, 2008. On or about December 29, 2008, Canadian Superior issued a press release stating that the "drilling to date of 'Endeavor' is very encouraging." On or about January 23, 2009, Canadian Superior issued a press release announcing that the Company and its partners were conducting flow testing of the Endeavour well.

On or about February 10, 2009, Canadian Superior announced that it proposed to "monetize a 24% or larger interest in its Intrepid Block 5(c)." On or about February 12, 2009, Canadian Superior issued a press release announcing the "appointment, upon the application of BG of an interim Receiver of its participating interest in Intrepid Block 5(c). Pursuant to the Court Order, the Receiver, in conjunction with BG, will operate the property and conduct the flow testing of Endeavor." On or about February 17, 2009, Canadian Superior issued a press release announcing that it had received a demand letter from the Canadian Western Bank for repayment of all amounts outstanding under the Company's $45 million credit facility by February 23, 2009.

The statements referenced in the press releases and the financial filings during the Class Period were each materially false and misleading when issued because they misrepresented and failed to disclose that the testing on the Victory and Bounty wells on the Block indicated only limited reserves, which were likely not economical to develop on their own and that the

Company was violating the Joint Operating Agreement by failing to meet its funding obligations to BG and payment to its drilling operator. As a result of the foregoing, the Company's financial statements lacked a reasonable basis for their positive statements about the Company, its prospects and earnings growth and therefore were materially false and misleading.

In response to the February 12, 2009 announcement of the appointment of an interim Receiver the Company's stock fell $0.40 per share or 40% from the day before. Furthermore, following the February 17, 2009 announcement of the demand letter for repayment of outstanding debt the shares fell to $0.16 or 30% from the close of $0.54 per share on February 13, 2009. Despite attempts at negotiating with its creditors, on or about March 5, 2009, the Company announced it had filed an application with the Court of Queen's Bench of Alberta for an order allowing for a plan of arrangement with its creditors and staying all claims and actions against the Company and its assets. On March 11, 2009, Canadian Superior confirmed that NYSE Alternext US LLC had halted trading of its common shares on March 5, 2009. Later on or about April 27, 2009, the Company issued a press release announcing the departure of defendants Gregory Novel and Michael Coolen.

During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Canadian Superior's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein. As a result of Defendants' wrongful acts and omissions, members of the Class, including the KFIP Group, have suffered significant losses and damages.

## ARGUMENT

### I. THE KFIP GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

#### A. The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed *Sgalambo* Action published a notice on *Business Wire* on December 9, 2009. *See* Brower Decl., Exhibit C.[4] This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be February 8, 2010. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this Action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, the statute directs the Court to the following objective criteria:

---

[4] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

**B. The KFIP Group Is "The Most Adequate Plaintiff"**

**1. The KFIP Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

The KFIP Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published notice on *Business Wire*, a national business-oriented wire service, on December 9, 2009. Accordingly, the KFIP Group meets the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and has filed its motion by February 8, 2010.

Moreover, the KFIP Group has the largest known financial interest in the relief sought from its investments in Canadian Superior common stock. Further, the members of the KFIG Group have shown their willingness, through Jeffrey Kramer, the general partner, to represent the Class by signing sworn Certifications detailing their investments in Canadian Superior common stock during the Class Period and confirming their willingness to discharge the obligations of class representatives in this Action. *See* Brower Decl., Exhibit A.

In addition, the KFIP Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm

resume of proposed Lead Counsel, Brower Piven, is attached as Exhibit D to the Brower Declaration.

### 2. The KFIP Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401-02 (S.D.N.Y. 2004). As demonstrated herein, the KFIP Group, with losses of approximately $397,096.03, has the largest known financial interest in the relief sought by the Class. *See* Brower Decl., Exhibit B.

### 3. The KFIP Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant

prerequisites to Lead Plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted).

As detailed below, the KFIP Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The KFIP Group's claims are typical of those of other Class members and it can adequately serve as Lead Plaintiff.

**i. The KFIP Group's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the claims of the KFIP Group's numbers are identical to, and non-competing and non-conflicting with the claims of the other Class members. The KFIP Group purchased Canadian Superior stock during the Class Period when the stock prices were artificially inflated as a result of Defendants' misrepresentations and

omissions, and thus, both the KFIP Group's members and the Class members suffered damages as a result of these purchases. Therefore, the KFIP Group's members' claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 49-50. The KFIP Group is not subject to any unique or special defenses. Thus, the KFIP Group meets the typicality requirement of Rule 23 because its claims are the same as the claims of the other Class members.

**ii. The KFIP Group Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

The KFIP Group's members' interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between the members of the KFIP Group and the other Class members, but the members of the KFIP Group have a significant, compelling interest in prosecuting this Action to a successful conclusion based upon the very large financial loss of $397,096.03 that they have suffered as a result of the wrongful conduct alleged in this Action. This motivation, combined with the KFIP Group's members' identical interests with the members of the Class, demonstrates that the KFIP Group will vigorously pursue the interests of the Class. In addition, the KFIP Group has selected a law firm to represent it and the Class that is highly experienced in prosecuting securities class actions.

In sum, because of the KFIP Group's common interests with the Class members, its clear motivation and ability to vigorously pursue this Action, and its competent counsel, the KFIP

Group meets the adequacy requirement of Rule 23. Since the KFIP Group meets both the typicality and adequacy requirements of Rule 23, and has sustained the largest amount of losses from Defendants' alleged wrongdoing, the KFIP Group is the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and it should be appointed as such to lead this Action.

**4. The KFIP Group is an Appropriate Group**

The KFIP Group satisfies the stringent requirements developed by the courts for a "group" to act as lead plaintiff under the PSLRA. The PSLRA expressly refers to the "person or ***group of persons*** that…has the largest financial interest in the relief sought…" 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added). Thus, the fact that the KFIP Group is moving as a "group" does not affect its suitability to serve as lead plaintiff because it is the type of group contemplated by Congress under the PSLRA to serve as lead plaintiff in federal securities law actions. To determine whether a putative "group" meets the definition of a "group" under the PSLRA, the court's "singular focus will be whether the asserted group has demonstrated the ability to effectively manage the litigation in the interests of the class and direct the litigation without undue influence of counsel." *In re Versata, Inc. Sec. Litig.*, No. 01-1439, 2001 U.S. Dist. LEXIS 24270, at *21-22 (N.D. Cal. Aug. 20, 2001). The members of the KFIP Group's have shown their willingness to represent the Class by signing sworn Certifications detailing their investments in the Company's common stock during the Class Period and confirming their willingness to discharge the obligations of class representatives. *See* Brower Decl., Ex. A.

"Most courts . . . are comfortable with permitting a group of persons to serve as lead plaintiff as long as the individuals in the group have some relationship pre-existing the litigation other than simply having purchased stocks that lost value." *Winn v. Symons Int'l Group*, No. 00-

0310, 2001 U.S. Dist. LEXIS 3437, at *13-15 (S.D. Ind. Mar. 21, 2001) (appointing two brothers and another person who "had a personal and professional relationship" with the brothers as lead plaintiffs; citing cases); *In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401 (S.D. Tex. 2000) ("requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment."); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) ("Under this approach, a court may consider all relevant factors, such as descriptions of [the group's] members, including any pre-existing relationships among them") (internal citations and quotations omitted); *In re Landry's Seafood Rest., Inc.*, No. 99-1948, 2000 U.S. Dist. LEXIS 7005, at *16 (S.D. Tex. Mar. 30, 2000) ("After a careful review of the case law, this Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (appointing two brothers to serve as lead plaintiffs); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) (appointing as lead plaintiff a group consisting of three family members and their associated investment groups); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999) (determining that a "group" must have "a meaningful relationship preceding the litigation," and be "united by more than the mere happenstance of having bought the same securities").

The KFIP Group is a small, cohesive group, comprised of three limited partnerships, Vermont Capital Investors, Northeast Investment Properties, and Hunter Investment Properties. Jeffrey Kramer is the general partner of the limited partnerships and is authorized to make all

investment decisions on behalf of those entities. One or more members of Jeffrey Kramer's immediate family are limited partners. *See* Brower Decl., Ex. A (¶3 of each Plaintiff's Certification). Thus, the KFIP Group provides no issues for Defendants to exploit to the detriment of the Class. Accordingly, the KFIP Group, the properly constituted PSLRA group with the largest losses among the competing movants, is the "most adequate plaintiff."

## II. THE COURT SHOULD APPROVE THE KFIP GROUP'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The KFIP Group has selected Brower Piven to serve as Lead Counsel for Lead Plaintiff and the Class. The firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Brower Decl., Exhibit D. This Court may be assured that in the event that the KFIP Group's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the KFIP Group respectfully requests that this Court enter an order (1) appointing the KFIP Group to serve as Lead Plaintiff in this Action; (2) approving the KFIP Group's selection of Lead Counsel for Lead Plaintiff and the Class; and (3) granting such other and further relief as the Court may deem just and proper.

Dated: February 8, 2010

Respectfully submitted,

**BROWER PIVEN**
A Professional Corporation

*/s/* David A.P. Brower

David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Counsel for the KFIP Group and Proposed Lead Counsel for the Class*