**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

**DAVID SGALAMBO, Individually And**
**On Behalf of All Others Similarly**
**Situated,**

                    **Plaintiff,**

        **- against -**

**CRAIG MCKENZIE, LEIF SNETHUN,**
**MICHAEL E. COOLEN, GREGORY S.**
**NOVAL AND LEIGH BILTON,**

             **Defendants.**

-------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 10087 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This federal securities class action is brought on behalf of those who

purchased the common stock of Canadian Superior Energy Inc. ("SNG")[1] between

January 14, 2008 and February 17, 2009 (the "Class Period").  Three movants

submit competing applications seeking appointment as lead plaintiff and to have

their respective selections of counsel approved.  For the reasons discussed below,

Gino Ströker is appointed lead plaintiff and his selection of the law firms of

---

[1]      Canadian Superior Energy Inc.'s stock symbol is SNG.

Robbins Geller Rudman & Dowd LLP f/k/a Coughlin Stoia Geller Rudman &

Robbins LLP ("Robbins Geller")[2] and Holzer Holzer & Fistel LLC ("Holzer") as

co-lead counsel is approved.

## II.   BACKGROUND

### A.   Facts[3]

SNG engages in the exploration for, acquisition, development, and

production of petroleum and natural gas, and liquified natural gas projects

primarily in western Canada, offshore Nova Scotia, offshore Trinidad and Tobago,

the United States, and North Africa.[4]  SNG's common stock is registered with the

Securities and Exchange Commission and is traded on the American Stock

Exchange ("AMEX") and the Toronto Stock Exchange.[5]

On April 3, 2006, SNG announced that it had signed a production

sharing contract on July 20, 2005, with the government of Trinidad and Tobago to

---

[2]     *See* Notice of Firm Name Change (Docket No. 32).

[3]     The facts in this section are taken from the Complaint ("Compl.") and are presumed true for purposes of this motion.

[4]     *See* Compl. ¶ 7.

[5]     *See id.* ¶ 12.  SNG is not named as a defendant in the action because it sought protection under Canadian bankruptcy and reorganization laws and has recently reorganized.  *See id.* ¶ 7.

drill wells on "Intrepid Block 5(a)" – an area off the coast of Trinidad.[6]  As part of

that transaction, SNG entered into agreements for the exploration, drilling, and

development of Intrepid Block 5(c) with a Canadian based oil and gas exploration

company – Challenger Energy – and BG International Limited ("BG").[7]  On

January 14, 2008, SNG issued a press release announcing that it, along with its

partners Challenger Energy and BG, had discovered natural gas reserves in Intrepid

Block 5(c).[8]  Thereafter, SNG made a number of public statements that were

positive about SNG, its prospects, and its earnings growth based on its investment

in Intrepid Block 5(c).[9]

   Yet, these positive assessments were unrealistic and the outlook for

SNG and Intrepid Block 5(c) was not so rosy.  According to plaintiff, SNG's

public statements touting the future prospects of SNG's natural gas drilling

program and the success of Intrepid Block 5(c) were false and misleading because

they failed to disclose that the reserves for Intrepid Block 5(c) were below the

economic threshold for development, SNG could not meet its funding obligations

---

[6]   *See id.* ¶ 21.

[7]   *See id.* ¶¶ 22, 29.

[8]   *See id.* ¶ 30

[9]   *See id.* ¶¶ 30-57.

3

under the joint operating agreement between SNG and BG due to financial constraints, and otherwise lacked a reasonable basis for the positive statement about SNG, its prospects and earnings growth.[10]

On February 12, 2009, SNG issued a press release announcing the "appointment, upon the application of BG of an interim Receiver of its participating interest in Intrepid Block 5(c). Pursuant to the Court Order, the Receiver, in conjunction with BG, will operate the property and conduct the flow testing of the Endeavour well which [SNG] believes will validate its operations to date."[11] In response to this announcement, SNG's stock price fell $0.40 per share, or forty-four percent.[12] On February 17, 2009, SNG announced that it had received a demand letter from the Canadian Western Bank for repayment of all amounts outstanding under SNG's forty-five million dollar credit facility with the bank by February 23, 2009.[13] In response to this announcement, SNG's stock price fell again – by $0.16 per share, or thirty percent.[14]

---

[10]     *See id.*

[11]     *Id.* ¶ 58.

[12]     *See id.*

[13]     *See id.* ¶ 60.

[14]     *See id.*

4

## B.    Procedural History

On December 9, 2009, David Sgalambo filed this class action against

certain of SNG's officers and directors alleging violations of the federal securities

laws.  The same day the Complaint in this action was filed, notice of the action was

disseminated to the putative class.[15]  On February 8, 2010, SNG investors Gino

Ströker, Anthony Pacchia, the Kramer Family Investment Partnerships Group

("KFIP"), Algine M. Perry, and James Wolf, III moved to be appointed lead

plaintiff.  Sgalambo did not move to be appointed lead plaintiff.  After movants

filed their initial motions, Perry and Wolf withdrew their motions, noting that they

did not possess the largest financial interest in the litigation.[16]

Ströker, a Belgian citizen who purchased a total of 198,900 shares of

SNG during the Class Period, incurred a loss of $500,317.[17]  Pacchia, who

---

[15]    *See* 12/9/09 Notice, *Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Against Former Executives of Canadian Superior Energy Inc.*, Ex. A to the Declaration of David A. Rosenfeld, Ströker's counsel, in Support of the Motion of Gino Ströker for Appointment as Lead Plaintiff and Approval of Selection of Co-Lead Counsel ("Rosenfeld Decl.").

[16]    *See* Notices of Withdrawal (Docket Nos. 23, 27).

[17]    *See* Ströker's Purchases and Losses, Ex. B to Rosenfeld Decl.; Ströker's Certification of Named Plaintiff Pursuant to Federal Securities Laws, Ex. C to Rosenfeld Decl.

5

purchased 169,032 shares of SNG, has suffered an estimated loss of $393,627.[18]

KFIP purchased approximately 105,000 shares of SNG for a total loss of

$397,096.03.[19]  KFIP and Pacchia do not dispute that Ströker possesses the largest

financial interest among all the movants.[20]  They nonetheless oppose his motion on

the grounds that, as a Belgian citizen, Ströker is subject to unique defenses

rendering him an inadequate lead plaintiff.

---

[18]    *See* Pacchia's Certification Pursuant to the Federal Securities Laws, Ex. 3 to the Declaration of Lawrence P. Eagel, Pacchia's counsel ("Eagel Decl.").

[19]    *See* KFIP Consolidated Schedule of Transactions and Losses, Ex. B to the Declaration of David A.P. Brower, KFIP's counsel, in Support of Motion of KFIP to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Brower Decl.").

[20]    *See* Memorandum in Support of the Motion of KFIP and Pacchia to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("KFIP/Pacchia Opp.") at 2.  KFIP and Pacchia joined forces to oppose Ströker's motion after the initial motions were filed.  They admit that they "are not seeking to have their losses aggregated for the purposes of calculating the movant with the 'largest financial interest in the relief sought.'"  *Id.* at 9 n.8.  Nor could they, as post-motion efforts to group movants to aggregate their losses violates the strict sixty day deadline to file a motion for lead plaintiff appointment established by the Private Securities Litigation Reform Act ("PSLRA").  *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999) (noting that courts strictly adhere to the PSLRA's deadline to prevent movants from "manipulat[ing] the size of their financial loss by . . . adding additional persons to a 'group' in supplemental filings . . . [t]his would effectively render the strict timeliness set forth in the PSLRA meaningless, and would nullify Congress's attempt to expedite the lead plaintiff appointment process"); *see also In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 19-20 (D.D.C. 2006) (rejecting the "joint opposition" of a group formed post-motion to raise "concerns" about presumptive lead plaintiff and push their joint candidacy).

## III.    LEGAL STANDARD

In determining whom to appoint as lead plaintiff, the PSLRA sets

forth a required procedure.[21]  The lead plaintiff should be the plaintiff "most

capable of adequately representing the interests of class members."[22]  The PSLRA

requires that the "most adequate plaintiff" be determined by a two-step competitive

process.[23]

The first step establishes the presumptive most adequate plaintiff as

the "person or group of persons" who meet(s) the following three criteria:  (1) the

candidate must have "filed the complaint or made a motion in response to a

notice;"[24] (2) the candidate must have "the largest financial interest in the relief

sought by the class,"[25] and (3) the candidate must "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."[26]  At the lead

plaintiff stage of the litigation, in contrast to the class certification stage, "a

proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy

---

[21]    *See* 15 U.S.C. § 78u-4(a)(3)(B).

[22]    *Id.* § 78u-4(a)(3)(B)(I).

[23]    *See id.* § 78u-4(a)(3)(B)(iii).

[24]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa).

[25]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

[26]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(cc).

7

the typicality and adequacy requirements of Rule 23."[27] "Typicality 'requires that

the claims of the class representatives be typical of those of the class, and is

satisfied when each class member's claim arises from the same course of events,

and each class member makes similar legal arguments to prove the defendant's

liability.'"[28]  "The adequacy requirement is satisfied where the proposed Lead

Plaintiff does not have interests that are antagonistic to the class that he seeks to

represent and has retained counsel that is capable and qualified to vigorously

represent the interests of the class . . . ."[29]

       Once the presumptive most adequate plaintiff has been designated, the

court conducts a second inquiry in which members of the class have the

opportunity to rebut that plaintiff's presumptive status.  In order to rebut the

designation, class members must prove either that the presumptive most adequate

plaintiff "will not fairly and adequately protect the interests of the class" or "is

subject to unique defenses that render such plaintiff incapable of adequately

---

[27]    *In re Bank of America Corp. Sec. Deriv. & ERISA Litig.*, 258 F.R.D.
260, 268 (S.D.N.Y. 2009) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94
(S.D.N.Y. 2007)).

[28]    *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-
Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (quoting
*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

[29]    *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189
(S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)).

representing the class."[30]  If the presumptive most adequate plaintiff is disqualified

on these grounds, the candidate's position is forfeited and the court returns to the

first phase to determine a new presumptive most adequate plaintiff.  The process

repeats itself until a candidate succeeds in both the first and second phases of

inquiry.  The lead plaintiff determination does not depend on the court's judgment

of which party would be the best lead plaintiff for the class, but rather which

candidate fulfills the requirements of the PSLRA.[31]

## IV.  DISCUSSION

### A.    Lead Plaintiff

The movants do not dispute that Ströker properly moved for lead

plaintiff appointment in response to the Class notice and possesses the largest

financial interest in the litigation.[32]  Ströker also meets the other requirements of

Rule 23.  Ströker purchased shares in SNG during the Class Period and claims that

he suffered damage as a result of SNG's artificially inflated stock price caused by

---

[30]     15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

[31]     *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly.").

[32]     *See* KFIP/Pacchia Opp. at 2.

9

defendants' false and misleading statements. Ströker is typical of the class.[33]

Ströker also satisfies the adequacy requirement because he seeks identical relief on

identical claims based on identical legal theories making his interests not

antagonistic with other class members. Ströker has also submitted a Certification

affirming his understanding of the duties owed to absent class members through

his commitment to oversee the prosecution of this class action.[34]  Finally, Ströker

has retained Robbins Geller and Holzer as co-lead counsel to represent the Class.

Both are highly competent plaintiffs' firms with substantial securities class action

experience.[35]  Ströker satisfies the adequacy requirement for lead plaintiff

appointment and is the presumptive most adequate plaintiff.

Having identified Ströker as the presumptive most adequate plaintiff,

the other movants have the opportunity to rebut this presumption.  KFIP and

Pacchia seek to rebut Ströker's status on three grounds.  *First*, they argue that this

Court may lack subject matter jurisdiction over Ströker's claims based on the

---

[33]    *See Glauser*, 236 F.R.D. at 189 (finding typicality where proposed
lead plaintiff "like all class members" purchased the securities at issue during the
proposed class period at prices allegedly artificially inflated by the defendants'
false and misleading statements or omissions and suffered damage thereby).

[34]    *See* Ströker's Certification of Named Plaintiff Pursuant to Federal
Securities Laws, Ex. C to Rosenfeld Decl.

[35]    *See* Resume of Robbins Heller, Ex. D to Rosenfeld Decl.; Resume of
Holzer, Ex. E to Rosenfeld Decl.

Second Circuit's recent decision in *Morrison v. National Australian Bank Ltd.*[36]  In *Morrison*, the Second Circuit held that it lacked subject matter jurisdiction over an action brought by a "foreign cubed" plaintiff – *i.e.*, a foreign investor who purchased shares of a foreign company on a *foreign* securities exchange.[37]  KFIP and Pacchia assert that Ströker is a foreign cubed plaintiff and, thus, this Court lacks subject matter jurisdiction over Ströker's claims.[38]  However, the evidence submitted with Ströker's motion indicates that he traded on the AMEX, an *American* exchange.  The prices in Ströker's schedule of transactions and losses during the class period are delineated in United States dollar amounts.[39]  Such evidence is more than sufficient at this stage to demonstrate purchases on an American exchange.[40]  Indeed, this is the same evidence that KFIP and Pacchia

---

[36]    *See* KFIP/Pacchia Opp. at 10-11 (citing *Morrison*, 547 F.3d 167, 176 (2d Cir. 2008), *cert. granted*, 130 S. Ct. 783 (2009)); Reply Memorandum in Support of the Motion of KFIP and Pacchia to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("KFIP/Pacchia Reply") at 5-6.

[37]    *See Morrison*, 547 F.3d at 176.

[38]    *See* KFIP/Pacchia Opp. at 10-11.

[39]    *See* Ströker's Purchases and Losses, Ex. B to Rosenfeld Decl.

[40]    *See, e.g., Steinberg v. Ericsson LM Tel. Co.*, No. 07 Civ. 9615, 2008 WL 1721484, at *2 (S.D.N.Y. Apr. 11, 2008) ("[A]n examination of the evidence before the Court at the time of its ruling, specifically a comparison of the transaction prices of Mr. Fuhrer's shares, corroborates the claim that Mr. Fuhrer's shares were purchased on a United States securities exchange.").

submitted in support of their motions.[41]  Although unnecessary, Ströker also submitted a sworn declaration on reply affirming that he purchased all of his CSN shares during the Class Period on the AMEX, eliminating any uncertainty.[42]  As a result, there is an unequivocal connection between Ströker's claims and the United States.

KFIP and Pacchia argue, in the alternative, that even if Ströker purchased his shares on the AMEX, this Court still lacks subject matter jurisdiction over his claims under *Morrison*.[43]  The Second Circuit's holding in *Morrison* that it lacked subject matter jurisdiction was based on three considerations: (1) that the actions central to the alleged fraud occurred in Australia; (2) there was an absence of allegations that the alleged fraud affected American investors or American markets; and (3) there was a lengthy chain of causation between the American contribution to the misstatements and the harm to investors.[44]  Although a certain

---

[41]     *See* KFIP Consolidated Schedule of Transactions and Losses, Ex. B to Brower Decl. (stating purchases and losses in United States dollar amounts); Pacchia Schedule of Purchases of CSN Common Stock, Ex. 3 to Eagel Decl. (same).

[42]     *See* Ströker Decl., Ex. A to the Reply Declaration of David A. Rosenfeld in Further Support of Motion of Ströker for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, ¶ 5.

[43]     *See* KFIP/Pacchia Reply at 4-6 & n.4.

[44]     *See Morrison*, 547 F.3d at 176-77.

12

amount of the fraud alleged in this case occurred in Canada and involves a
Canadian company's shares, those shares were traded on the AMEX. Where an
action involves misrepresentations by a company trading on an American
exchange, "the mere fact that [Ströker] – or any other hypothetical [Belgian] in the
proposed class – hails from another country does not chance the fact that this
action falls squarely under the securities laws of the United States."[45]  Further
distinguishing this case from *Morrison*, American investors were harmed by the
alleged fraud – Sgalambo, KFIP, and Pacchia are all American investors.  That
these American investors will be represented by a Belgian citizen who suffered
identical harm based on identical facts does not interfere with this Court's subject
matter jurisdiction over the claims.  Accordingly, KFIP and Pacchia's first
argument against Ströker's appointment fails.

     *Second*, KFIP and Pacchia argue that courts are "wary" of appointing
foreign investors as lead plaintiffs even if they purchased the subject security on an
American exchange.[46]  Citing Southern District of New York cases *Borochoff v.*

---

[45]    *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007).
*Accord In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 351 (D. Md.
2003) ("Under this [effects] test, it has not been disputed that the court in this case
has jurisdiction over the claims . . . of foreign investors who purchased Royal
Ahold American Depositary Receipts . . . on a domestic exchange, because [that
activity has] significant effects in the United States.").

[46]    KFIP/Pacchia Opp. at 11-13.

*GlaxoSmith Kline PLC* and *In re Vivendi Universal S.A. Securities Litigation*,

KFIP and Pacchia urge this Court to reject Ströker's motion to be appointed lead

plaintiff because there is uncertainty regarding whether a Belgian court would give

*res judicata* effect to a judgment in favor of defendants.[47] Without the preclusive

effect of a United States judgment in Belgium, KFIP and Pacchia proffer that

Ströker can litigate his claims here, lose, and litigate them again in Belgium.[48]

      Contrary to KFIP's and Pacchia's contentions, courts routinely

appoint foreign investors as lead plaintiffs.[49] KFIP and Pacchia's reliance on

*Borochoff* and *In re Vivendi* is misplaced. Both cases involved foreign cubed

plaintiffs.[50] Because, as already discussed, Ströker is not a foreign cubed plaintiff,

---

[47]    *See id.* at 14-15 (citing *Borochoff*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (holding that the "possibility that foreign courts will not enforce a decision in favor of" defendant, raised significant concerns and "prudence cautions that the arguments for its exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group as lead plaintiff") and *In re Vivendi*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (refusing to certify a German investor under Rule 23, reasoning "plaintiffs have not shown a probability that German courts will give *res judicata* effect to a judgment in this case")).

[48]    *See id.* at 14; KFIP/Pacchia Reply at 6.

[49]    *See, e.g., Mohanty v. Bigband Networks, Inc.*, No. 07 Civ. 5101, 2008 WL 426250, at *10 (N.D. Cal. Feb. 14, 2008) (appointing an individual lead plaintiff who was a resident of the Republic of Cyprus).

[50]    *See In re Vivendi*, 242 F.R.D. at 81 (involving European plaintiffs who purchased shares of a French company traded on the Paris Bourse); *Borochoff*, 246 F.R.D. at 205 (involving a German plaintiff who purchased shares of a British

these cases are distinguishable.  Moreover, the court in *In re Vivendi* was able to conduct a detailed evaluation of German procedural law before concluding that a foreign judgment would not be recognized by German courts.[51]  As part of its assessment, the court was provided with evidence and expert submissions on German law.[52]  The court in *Borochoff* then relied on the conclusions drawn by the court in *In re Vivendi* when it rejected a German plaintiff's motion to be appointed lead plaintiff on similar grounds.[53]

No evidence or expert submissions on Belgian law have been presented here.  Instead, KFIP and Pacchia provide only secondary sources – one of which expressly disclaims its reliability.[54]  In fact, the United States and

---

company traded on the London Stock Exchange).

[51]    *See In re Vivendi*, 242 F.R.D. at 105.

[52]    *See id.*

[53]    *See Borochoff*, 246 F.R.D. at 204-05 (citing *In re Vivendi*, 242 F.R.D. at 104-05).

[54]    *See* KFIP/Pacchia Opp. at 13-14 (citing *Judicial Assistance Belgium*, United States Department of State Website, Ex. 11 to the Declaration of David A.P. Brower in Support of Motion of KFIP and Pacchia to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Brower Opp. Decl.") (noting that there is "no treaty, convention or other international agreement in force between Belgium and the United States regarding enforcement of judgments.  Expedited enforcement of U.S. judgements, therefore, [sic] not available and each case must be tried in Belgium on its merits," but also disclaiming that "the information in this circular is provided for general information only and may not be totally accurate in a specific case"), and Linda

Belgium have a long-standing treaty which provides, among other things, that

"Nationals of either Contracting Party within the territories of the other Party shall

be accorded full legal and judicial protection for their persons, rights and

interests."[55] The existence of such a treaty weighs against finding that Belgian

courts would refuse to give preclusive effect to a judgment in this case and renders

KFIP and Pacchia's second argument unavailing.[56]

*Finally*, KFIP and Pacchia contend that management of this case by a

Belgian plaintiff will prove difficult and will "subject the entire class to

unnecessary difficulties and expense posed by his foreign location."[57] This

statement is entirely speculative and provides insufficient grounds on which to find

Ströker an inadequate lead plaintiff. "[T]o exclude a foreign investor from lead

---

Silberman, *Enforcement and Recognition of Foreign Country Judgments in the United States*, New York University School of Law (2009), Ex. 12 to Brower Opp. Decl., and Survey on Foreign Recognition of U.S. Money Judgments, Committee on Foreign and Comparative Law, Association of the Bar of the City of New York (2001), Ex. 13 to Brower Opp. Decl.).

[55]     Treaty of Friendship, Establishment and Navigation, U.S.-Belgium, Feb. 21, 1961, 14 U.S.T. 1284.

[56]     *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 03 Civ. 2166, 2004 WL 3314943, at *5 (N.D. Ohio May 12, 2004) (appointing an Austrian lead plaintiff and noting that "Austrians, by treaty, are entitled to the same rights and privileges before United States courts as United States citizens").

[57]     KFIP/Pacchia Opp. at 15.

plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy."[58]  Because KFIP and Pacchia have failed to rebut Ströker's presumptive most adequate plaintiff status, Ströker's motion for appointment as lead plaintiff is granted.

### B.    Appointment of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."[59] Ströker has selected the law firms of Robbins Geller and Holzer as co-lead counsel. As ascertained from each firm's resume, and as stated earlier, both firms are qualified to litigate this action.  Therefore, Ströker's selection of Robbins Geller and Holzer as co-lead counsel is approved.

## V.    CONCLUSION

Ströker is appointed lead plaintiff in this action.  Robbins Geller and Holzer are appointed co-lead counsel.  The Clerk of the Court is directed to close

---

[58]    *In re Goodyear*, 2004 WL 3314943, at *5. *Cf. In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027-30 (N.D. Cal. 1999) (refusing to appoint two European foreign investors as lead plaintiff where, in addition to considering each investor's distance from California and differences in business culture, the investors stated that they were not interested in devoting the time necessary for sufficient representation, were under investigation for criminal fraud, and would face unique defenses regarding reliance; the court noted that it "[did] not say that a foreign investor could never qualify").

[59]    15 U.S.C. § 77z-1(a)(3)(B)(v).

17

these motions (Docket Nos. 4, 7, 10, 13, and 16).  A conference is scheduled for

April 12, 2010 at 5:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             March 29, 2010

## -Appearances-

**For Plaintiff:**

Michael I. Fistel, Jr., Esq.
Holzer Holzer & Fistel, LLC
1117 Perimeter Center West
Suite E107
Atlanta, Georgia 30338
(770) 392-0090

Samuel H. Rudman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road
Suite 200
Melville, New York 11747
(631) 367-7100

**For Movant Gino Ströker:**

David Avi Rosenfeld, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road
Suite 200
Melville, New York 11747
(631) 367-7100

**For Movant The Kramer Family
Investment Partnership Group:**

David A.P. Brower, Esq.
Robbins Umeda, LLP
600 "B" Street
Suite 1900
San Diego, California 92101
(619) 525-3990

**For Movant Anthony Pacchia:**

Lawrence P. Eagel, Esq.
Bragar, Wexler & Eagel, P.C.
885 Third Avenue
Suite 3040
New York, New York 10022
(212) 308-5858

**For Movant James Wolf, III:**

Robin Bronzaft Howald, Esq.
Glancy Binkow & Goldberg LLP
1430 Broadway
Suite 1603
New York, New York 10018
(917) 510-0009

**For Movant Algine M. Perry:**

Mark Peter Kindall, Esq.
Schatz and Nobel PC
20 Church Street, Suite 1700
Hartford, Connecticut 06103
(860) 493-6294

**For Defendants:**

Damion Kenneth Lee Stodola, Esq.
Jack C. Auspitz, Esq.
Jamie A. Levitt, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 336-4087